UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LARSELLA OGLESBY,

                                        Case No.:

                Plaintiff,
    -against-

ALLTRAN FINANCIAL, LP,
LVNV FUNDING LLC,
RESURGENT CAPITAL SERVICES, LP, and
FIRST NATIONAL COLLECTION BUREAU
                **Defendants.**
-------------------------------------------------------------------X

## ORIGINAL COMPLAINT

Plaintiff Larsella Oglesby brings suit against debt collector Defendants Alltran Financial, LP, LVNV Funding LLC, Resurgent Capital Services, LP, and First National Collection Bureau for their violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* and New York General Business Law § 349 for, *inter alia*, seeking to collect on a judgment that in fact had been vacated.

## JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Kings County, New York.

## PARTIES

3.     Plaintiff Larsella Oglesby ("Mr. Oglesby") is an individual currently residing in Kings County, New York.

4.     Defendant Alltran Financial, LP ("Alltran") is a foreign limited partnership organized and existing under the laws of the state of Texas. Alltran engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

5.     Defendant LVNV Funding LLC ("LVNV") is a foreign limited liability company organized and existing under the laws of the state of Delaware. LVNV engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

6.     LVNV's primary (indeed sole) purpose is to purchase charged off consumer accounts after they are in default with the putative original creditor and have those debts collected upon. LVNV files hundreds of thousands of collection lawsuits under its name, and has hundreds of thousands collection letters sent and calls made on its behalf. LVNV is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

7.     Defendant Resurgent Capital Services, LP ("Resurgent") is a limited partnership organized under the laws of the state of Delaware. Resurgent engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

8.     Resurgent is the master servicer for putative charged off consumer debts owned by LVNV. Resurgent is assigned rights to seek to collect the charged-off consumer debts from LVNV and others, but is not assigned title or ownership to the debt, which remains with LVNV

or other debt buyer. Resurgent then either collects the charged off consumer debt directly, or indirectly through its agents, non-attorney debt collectors (such as Alltran and First National) or attorney debt collectors. Resurgent's primary (indeed sole) purpose is to is to collect upon charged off consumer accounts owned by debt buyers such as LVNV, and Resurgent does so regularly. Resurgent is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

9.     For the reasons stated in the prior paragraph, LVNV Funding LLC is jointly and severally liable for the acts it takes through its agent and master servicer Resurgent Capital Services, LP. Therefore this complaint will refer to these two entities jointly and severally as the LVNV Defendants.

10.    Defendant First National Collection Bureau, Inc. ("First National") is a corporation organized under the laws of the State of Nevada. First National engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of First National's business in New York.

11.    First National's primary (indeed sole) purpose is to collect charged off consumer debt owned by another, including LVNV, and seek to collect on those debt by, *inter alia*, sending thousands of collections letters, and First National does so regularly. First National Resurgent is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

12.    LVNV is the owner of charged of alleged consumer debts. Resurgent is the master servicer for LVNV taking the affirmative actions to collect the alleged debts for LVNV. LVNV is therefore jointly and severally liable for the acts of Resurgent. Consequently, this complaint will refer to Resurgent and LVNV jointly as LVNV, unless otherwise indicated.

**Mr. Oglesby vacates a default judgment entered by the use of a false affidavit to**

**collect a time barred debt that was the result of the theft of his identity.**

13. On or around July 30, 2008, the LVNV Defendants filed a collection lawsuit against Mr. Oglesby in Kings County Civil Court captioned *LVNV v. Larsella Oglesby*, cv-091323-08/KI. *See* **Exhibit A** (the Collection Lawsuit).[1] The action sought to collect a putative consumer debt owed on a Sears retail credit card in the amount of $2,679.06.

14. This complaint in the Collection Lawsuit lists May 2, 2004 as the date of default. *Id*. The statute of limitations for an action upon a debt arising from a retail credit card is four years.[2] Thus the Collection Lawsuit was time barred on its face.

15. Mr. Oglesby had never had a Sears card. Mr. Oglesby was the victim of identity theft. For years Mr. Oglesby has been hounded by debt collectors for debts he never incurred.

16. LVNV Defendants never served the summons and complaint on Mr. Oglesby. Instead, the LVNV Defendant used a false affidavit of service. The affidavit of service alleged Mr. Oglesby was served on 1505 Ocean Avenue, Brooklyn, NY by affixing a copy to the door. *See* **Exhibit B** (Affidavit of Service). The affidavit filed purports that the 1505 Ocean Avenue address was "defendant's usual place of abode" – this is false.

17. Because Mr. Oglesby was never served, he did not know he was being sued and did not appear in the action. On October 20, 2008, LVNV obtained a default judgment for $3,874.88, with post-judgment interest of 9 percent. *See* **Exhibit C** (Default Judgment).[3]

---

[1] All Exhibits referenced in this complaint are incorporated by reference in their entirety.

[2] The Collection Lawsuit was time-barred under CPLR § 3211(a)(5) and U.C.C. Law § 2-725. The complaint itself noted it was suing Mr. Oglesby on a retail credit card account held with Sears. Retail credit card accounts are contracts for sales of goods governed by the U.C.C. Law § 2-725. The statute of limitations on actions pursuant to U.C.C. Law § 2-725 is four years.

[3] Mr. Oglesby is not bringing an FDCPA suit based on the filing of the time barred lawsuit or the entry of a default judgment based on a false affidavit of service. Those claims are barred by the one year FDCPA statute of limitations. However, the fact that the account was never his, and that he never had an opportunity to fight the suit

18.     Mr. Oglesby did not learn of the Collection Lawsuit or the default judgment until years later.

19.     On July 3, 2014, Mr. Oglesby, with the help of the advice of the CLARO volunteer legal clinic, filed a *pro se* Order to Show Cause ("OSC") to vacate the default judgment, with a proposed answer. *See* **Exhibit D** (OSC). Mr. Oglesby stated in his affidavit in support of his order to show cause that he never received the summons and complaint, only learned of the judgment when he saw it on his credit report, did not live at the address listed on the affidavit of service since 1998, and that he did not owe the alleged debt.

20.     Finding merit to the application, Civil Court Judge Lisa S. Ottley granted the OSC the same day and set a hearing for July 17, 2014.

21.     As ordered by Judge Ottley, on or before July 7, 2014, Mr. Oglesby served a copy of the OSC on the law firm who filed the Collection Lawsuit and who continued to be listed as the attorney of record, Kirschenbaum & Phillips, P.C. ("Kirschenbaum") in Farmingdale, NY.[4]

22.     On July 17, 2014 the Court held a hearing on Mr. Oglesby's OSC. LVNV did not appear or file opposition, so on default the Court vacated the default judgment, lifted and post-judgment restraints, and restored the case to the calendar contingent on Mr. Oglesby serving a notice of entry of the order on Kirschenbaum.  Mr. Oglesby promptly and timely complied. *See* **Exhibit E** (Order vacating default judgment with notice of entry).

---

when filed, helps explain the anger and frustration Mr. Oglesby felt when Defendants continued to collect on the default judgment well after Mr. Oglesby vacated the default judgment. Also, in determining the amount of FDCPA statutory damages for FDCPA for violations within the statute of limitation, 15 U.S.C. § 1692k(a)(2) & (b)(1), a jury may consider FDCPA the nature and frequency of the FDCPA violations outside of the statute of limitations..

[4] Kirschenbaum listed its address on the 2008 Collection Lawsuit as being in Levittown NY.  However, by the date of the filing of the OSC in 2014 Kirschenbaum updated its address in the Court's records to its current address in Farmingdale, NY. Judge Ottley ordered Mr. Oglesby to mail the OSC to Kirschenbaum at its current Farmingdale, NY, which he did. Kirschenbaum's post-judgment updating of its address suggests that it continued to be the attorney for the LVNV Defendants in post-judgment collections.

5

23.     The Court set a bench trial for September 15, 2014.  Mr. Ogelsby appeared ready for trial. LVNV did not appear. Therefore the Court dismissed the lawsuit. *See* **Exhibit F** (Order of Disposition).

**The LVNV Defendants use Alltran and First National to repeatedly seek to collect on the non-existent judgment.**

24.     It seemed to Mr. Oglesby that he had taken care of this debt that he never incurred nor had the opportunity to contest, and that it would no longer wrongfully impact his ability to obtain credit and have freedom over his own financial decisions.

25.     Unfortunately the LVNV Defendants were not done with Mr. Oglesby.

26.     On or about April 10, 2018, debt collector Alltran Financial, LP ("Alltran") mailed Mr. Oglesby a debt collection letter on behalf of LVNV Funding, LLC seeking to collect the non-existent judgment. **Exhibit G** (Alltran Letter).  The Alltran Letter was entitled, "Notice of Judgment Collection." The letter gave a "judgment number" of 91323/08, a slight abbreviation of the index number from the Collection Lawsuit. The Alltran letter referenced the "current creditor" as LVNV Funding, LLC – the plaintiff in the Collection Lawsuit. The Alltran Letter stated the judgment was "awarded" on October 23, 2018, the same day as the entry of the default judgment in the Collection Lawsuit.

27.     The Alltran Letter ominously threatened, "THIS JUDGMENT MAY BE FORWARDED TO AN ATTORNEY FOR EXECUTION." *Id*. [capitalization in the original]. As there was no judgment, the threat of execution, or to forward the account to an attorney to do so, was a threat to take an act prohibited by law.  Further, the Alltran Letter stated that the "total due" was $7,197.43, nearly three times the amount the Collection Lawsuit claimed was due.  Apparently the "total due" was based on an award of costs of court and 9 percent post- judgment interest on

both the amount sought in the Collection Lawsuit and the costs of court. As the judgment no longer existed, seeking 9 percent interest and costs of court are demands for amount not authorized by law or contract.

28. As required by 15 U.S.C. § 1692g(a)(4), the Alltran Letter, the initial written communication from Alltran to Mr. Oglesby, disclosed, *inter alia*, "If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification."

29. In response, on or about April 28, 2018 Mr. Oglesby sent Alltran a letter disputing the validity of the debt, specifically stating:

> **Please note that the underlying judgment under index number 91323/08 was vacated on July 17, 2014 and the action was subsequently discontinued on September 15, 2015. You are attempting to collect on a non-existent judgment for which the statute of limitations has run in violation of the FDCPA.**

*See* **Exhibit H** (Dispute Letter to Alltran) (emphasis in the original)

30. By sending the dispute letter, Mr. Oglesby required Alltran to cease its collection activity until it verified the validity of the (vacated) judgment pursuant to 15 U.S.C. § 1692g(b). Mr. Oglesby also referenced in the letter an analogous provision under New York Administrative Code § 20-493.2.

31. Unfortunately, Alltran and LVNV ignored Mr. Oglesby's letter. Instead, LVNV continued forwarding the (non-existent) judgment to other debt collectors to collect on its behalf.

32. On or about May 29, 2018 debt collector First National Collection Bureau Collection, Inc. ("First Bureau") sent Mr. Oglesby a letter seeking to collect the (non-existent) judgment on

behalf of LVNV. *See* **Exhibit I** ("First Bureau Letter").

33. The letter stated that "a judgment" had been entered, that the account had been "placed with our office for collection by our client LVNV Funding, LLC," and that the "total due" had increased to $7,236.73.

34. The First National Letter also made false threats of credit reporting, stating:

> Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations.

35. In fact, there is no legal way that LVNV Funding, LLC could report the putative debt to the credit reporting agency. Even if the judgment was never vacated, the judgment could not be reported more than 7 years after the date of its entry, which was in 2008, ten years prior to the date of the collection letter. The same would be true for the underlying debt: it could not be reported more than 7 years after the date of the default of the underlying account, which the Collection Lawsuit says was in 2004, fourteen prior to the date of the First National Letter.

36. As the First National Letter appears to be a standard form letter, the misrepresentation as to credit reporting seems to be a pattern and practice of LVNV and First National. Indeed, First National may have been listing the threat of credit reporting blindly, without regard to the age of the account. Specifically, the First National Letter bizarrely lists the "date of default" as a dollar amount, 6,799.58. The field for the "date of last payment" is blank.

37. On or about July 6, 2018 Resurgent Capital Services, LP ("Resurgent") sent a letter under its own letterhead to Mr. Oglesby in connection with the collection of the non-existent judgment. *See* **Exhibit J** (the "Resurgent Letter). This is the initial written communication by Resurgent directly to Mr. Oglesby. In its letter Resurgent does not identify the nature of the debt for which

it is writing (e.g. that it is the putative judgment), nor does it identify the alleged amount due.

38. The Resurgent Letter seemed to indicate that LVNV had received Mr. Oglesby's April 28, 2018 dispute letter to Alltran. Specifically, the Resurgent Letter stated, inter alia, "You are receiving this notice as a result of your recent dispute regarding the above-referenced account." Further, it the Resurgent Letter stated that, "New York state regulations require us to inform you that you have the right to request substantiation of this debt." As previously noted, Mr. Oglesby's April 28, 2018 Dispute Letter to Alltran specifically cited to New York Administrative Code § 20-493.2. Oddly, the Resurgent Letter asks Mr. Oglesby to do what he had already done: to submit the dispute "in writing" and provide "a clear statement that you are requesting substantiation of the debt." In his Dispute Letter to Alltran specifically itemized the documents he sought.

39. Moreover to the point, Resurgent was essentially suggesting that Mr. Oglesby's "recent dispute" was somehow insufficient and that he needed to provide additional information. This is simply not the case. Mr. Oglesby could not be clearer in the Alltran Dispute Letter as to the nature of his dispute: "**Please note that the underlying judgment under index number 91323/08 was vacated on July 17, 2014 and the action was subsequently discontinued on September 15, 2015. You are attempting to collect on a non-existent judgment for which the statute of limitations has run in violation of the FDCPA.**" (emphasis in the original).

40. As if all of this was not enough, many months later, on or about January 28, 2019, Mr. Oglesby checked his Experian report and noted that Alltran pulled his Experian credit report on or about April 9, 2018. As the very next day, April 10, 2018, Alltran sent a letter seeking to collect the non-existent judgment for LVNV Funding, LLC, it is readily apparent that Alltran pulled Mr. Oglesby's Experian credit report in connection with attempting to collect the non-

9

existent judgment for LVNV Finding, LLC. As no judgment existed, Alltran and LVNV had no permissible purpose to pull Mr. Oglesby's credit report.

### Defendants' Misconduct Inflicts Damages on Mr. Oglesby

41. Mr. Oglesby had been hounded for years by debt collectors for debts that he never owed. For the Collections Lawsuit, he was hounded by the LVNV Defendants for a default judgment entered by the use of a false affidavit of service, on a time-barred debt he never owed.

42. When he finally vacated the default judgment and had the case dismissed he thought he was free from that stress, anger, and frustration that he had experienced when he learned of the default judgment the first time. He had been denied credit because of the default judgment and thought he was getting his financial situation back under control by having the judgment vacated and the case dismissed.

43. When Mr. Oglesby began getting letters seeking to collect the non-existent judgement he was angry and frustrated. He was afraid that his bank account could be frozen. He stayed up until late into the night worrying about the debt collectors might do to him next. He felt like the debt collectors tried to swindle him, and not "doubling up" the amount by including huge amounts of interest. When will the debt collectors leave him alone?

### Defendants' Cross-Liability

44. As a preliminary matter, the FDCPA is a strict liability statute so the knowledge or intent of the debt collector is immaterial to FDCPA liability. Therefore, all defendants are liable for collecting on a non-existent judgment, either directly or through their agents. However, evidence of knowledge, both actual and charged, abounds.

45. The LVNV Defendants actually knew or were charged with knowing when the default judgment was vacated. Kirschenbaum, the attorneys of record for the LVNV Defendants, were

timely and properly served the OSC and the order vacating the default judgment. On information and belief, Kirschenbaum informed the LVNV Defendants of the same. Even if not, the LVNV Defendants are charged with the knowledge of their agents, regardless if that knowledge is not communicated to the principle.

46. If the LVNV Defendants represented to Alltran or First National that there was a valid enforceable judgment against Mr. Oglesby the LVNV Defendants would be liable for the misrepresentation knowing that the account was being forwarded for further collections.

47. A standard term in collection agreements is that the principle expressly disclaims the accuracy of the account information sent to the agent for collections, and puts the burden on the agent to independently verify the accuracy of that information. On information and belief this standard disclaimer term is in the agreements between the LVNV Defendants and Alltran and First National.

48. If Alltran or First National returned Mr. Oglesby's account to LVNV Defendants without disclosing that the judgment had been vacated and the case dismissed after being placed on notice of the same by Mr. Oglesby, then they would be liable for that misrepresentation knowing that the account was being returned likely for further collections.

49. The reference in the Resurgent Letter that the letter was being sent "as a result of your recent dispute" suggests that Alltran forwarded the April 28, 2018 Alltran Dispute Letter from Mr. Oglesby to the LVNV Defendants. If so, then the LVNV Defendants would have been on actual notice that the default judgment was vacated and the case dismissed, and yet forwarded the account to First National to collect on the non-existent judgment.

50. In any event, it appears none of the defendants took even the most ministerial of steps to determine whether the judgment was still valid by, for example, spending 15 seconds to type the

name of Mr. Oglesby into the free, publicly available court website, eCourts, to determine whether the judgment was vacated. Had any of the defendants done so, they would have seen the judgment was vacated and the case dismissed. *See* **Exhibit K** (E-Courts Printout).

### LVNV'S Pattern and Practice of Collecting on Vacated Judgments

51. Mr. Oglesby is the victim of what has become a frighteningly common debt collection practice –attempting to collect on a consumer debt judgment when that judgment has been vacated and the case dismissed. Indeed, the undersigned has sued Defendants LVNV and Resurgent *six* times in the last four years for collecting on vacated judgment.

52. This includes continuing to collect on judgments (including sewer service judgments) after those judgments have been vacated, and blindly forwarding those putative judgments *en masse* for further collection, while taking no steps to verify the validity of the underlying judgments, nor the accuracy of the information upon which the judgments are based.

53. The LVNV Defendants' conduct has a broad impact on consumers at large.

54. Given allegations of widespread sewer service in New York,[5] orders to show cause to

---

[5] *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 282-83 (S.D.N.Y. 2012) ("*Sykes II*") *aff'd sub nom. Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015) ("*Sykes III*")

> In this case, four plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a scheme to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. Defendants allegedly acted in concert to defraud these consumers in violation of [the FDCPA, RICO, GBL 348, and Judiciary Law 487]. Plaintiffs… move for class certification.
>
> The motion is granted…. The record also shows that on hundreds of occasions the defendant process servers purported to serve process at two or more locations at the same time… [D]efendants' unitary course of conduct purportedly to obtain default judgments in a fraudulent manner presents common questions of law and fact that can be resolved most efficiently on a class-wide basis.

*See also Velocity Investments, LLC v. McCaffrey*, 31 Misc. 3d 308, 311-12, 921 N.Y.S.2d 799, 801-02 (Dist. Ct. 2011)(reciting terms of *Matter of Pfau v. Forster & Garbus, et al.* stipulation to resolve allegations the "many if not most" of the 73,000 affidavits of service were false).

vacate those judgments are common and commonly known by debt collectors. The LVNV Defendants specifically know this because they have repeatedly been sued for collecting on sewer service default judgments that were in fact vacated.

55. The LVNV Defendants' conduct impacts the hundreds of consumers in the state of New York who have been victims of "sewer service" and have had those judgments vacated, but none-the-less have and have had vacated judgments executed upon.

56. The LVNV Defendants have been sued in *six* other FDCPA lawsuits in the last four years just by the undersigned for collecting on vacated sewer service judgments. *See Phillips v. LVNV Funding, et* al, 1:15-cv-07088 (SDNY); *Francis v. LVNV Funding LLC et al*, 1:15-cv-03757-MKB-JO; *Rosas v. Arrow Financial Services, LLC et al*, 1:14-cv-06462-MKB-JO (EDNY); *O'Neill v. LVNV Funding, LLC et al*, 1:14-cv-07636-ER-DCF (SDNY); *Martinez v. LVNV Funding LLC et al*, 1:14-cv-00677-RRM-MDG (EDNY); *Gomez v. Inovision-Medclr Portfolio Group, LLC et a*l, 1:13-cv-07395-RWS (SDNY).

57. The evidence and stipulations in those six cases support a finding that LVNV Defendants conduct is broadly consumer-oriented and has a scope beyond the conduct alleged in this complaint as to Mr. Oglesby, and, moreover, is being done willfully and wantonly.

58. On December 1, 2015 the Court in *Rosas v. Arrow Financial Services, LLC et al*, 1:14-cv-06462-AMD-JO (EDNY) "so ordered" a stipulation where the LVNV Defendants stipulated *inter alia* that they attempt to collect on vacated judgments, that they do so systematically, and they do so willfully and/or knowingly.

59. On July 30, 2015 in the aforementioned *Rosas* case, the LVNV Defendants produced an email dated September 24, 2012 with TrakAmerica (a forwarder of putative debts) documenting that the LVNV Defendants were collecting on 291 putative judgment accounts when in fact there

were no valid existing judgments.

60. On July 27, 2015 in the *O'Neill* case (wage garnishment on a vacated judgment), the LVNV Defendants produced an email dated November 04, 2014 from their Litigation Department stating that they had just received another lawsuit with similar allegations of collection of a vacated judgment.

61. In the *Martinez* case, the Court found the alleged misconduct of the LVNV Defendants, if true, would not only state a claim under GBL 349 but would be deceptive as a matter of law.[6]

## COUNT # 1 (AS TO ALL DEFENDANTS): VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

62. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

63. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

64. Congress designed the FDCPA to be enforced primarily through private parties – such as

---

[6] Simply put, Defendants' alleged practice of attempting to collect on judgments after those judgments had been vacated is deceptive on its face. The collection notices purport to collect a valid legal judgment when, in fact, the judgment had already been vacated. SAC ¶¶ 15-16, 33. Any argument that such conduct is not deceptive as a matter of law is baseless. A reasonable consumer reading such a notice would likely be misled into believing that a valid court judgment existed and this belief could coerce a reasonable consumer into paying the judgment under the mistaken belief that they could be subject to even harsher penalties for failing to pay a valid legal judgment. *Martinez v. LVNV Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016)

plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

65. The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative store credit card debt was incurred primarily for family, personal or household purposes. The LVNV Defendants themselves state in the Collection Lawsuit that the putative obligation arose from an alleged "consumer credit transaction." Further, LVNV Funding, LLC purchase charged off consumer credit obligations.

66. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

67. For the reasons set forth in the "Parties" section of this compliant each Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

68. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e, 1692f, and 1692g. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the compensation which may be lawfully received; representing or implying that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such

action is lawful and the debt collector or creditor intends to take such action; threatening to take and actually taking an action prohibited by law, or threatening to take an act not intended to be taken; communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; or (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement; and failing to provide the information required by 1692g(a) or to respond to a dispute in the manner required by 1692g(b).

## COUNT #2 (AS TO ALL DEFENDANTS): VIOLATIONS OF N.Y. GENERAL BUSINESS LAW § 349

69. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

70. New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state." An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. § 349(h).

71. As enumerated above, Defendants violated N.Y. Gen. Bus. § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. These acts were done by

Defendants systematically and, as such, have had a broad impact on consumers at large.

72. Defendants committed the above described acts willfully and/or knowingly.

73. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

74. As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349 *et seq*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and damages, together with costs and attorney's fees.

## **JURY DEMAND.**

75. Plaintiff demands a trial by jury.

## **PRAYER**

76. WHEREFORE, Plaintiff requests the following relief:

 a. A declaration that all Defendants have committed the violations of law alleged in this action;
 b. Statutory damages under 15 U.S.C. § 1692k;
 c. Attorney's fees and costs;
 d. A judgment for actual, statutory, punitive, and exemplary damages;
 e. Prejudgment and post judgment interest as allowed by law;
 f. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
March 29, 2019

                         Respectfully submitted,
                         /s/
                         Ahmad Keshavarz
                         The Law Office of Ahmad Keshavarz
                         16 Court St., 26th Floor
                         Brooklyn, NY 11241-1026
                         Phone: (718) 522-7900
                         Fax:    (877) 496-7809
                         Email: ahmad@NewYorkConsumerAttorney.com